**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**CHRISTOPHER BAITY,**

      **Petitioner,**

**v.**                         **Case No. 4:18cv003-WS/CAS**

**MARK S. INCH, Secretary,
Florida Department of Corrections,**

      **Respondent.**

_____/

**<u>REPORT AND RECOMMENDATION TO DENY § 2254 PETITION</u>**

On December 18, 2017, Petitioner, Christopher Baity, a prisoner in

the custody of the Florida Department of Corrections, with counsel, filed a

petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  ECF No.

1.  Pursuant to order, Petitioner filed an amended petition on the proper

form and a memorandum of law on October 29, 2018.[1]  ECF No. 15, 22,

23.  On June 14, 2019, Respondent filed a motion to dismiss the amended

complaint as untimely.  ECF No. 28.  On that date, Respondent also filed

record exhibits.  ECF No. 28, 28-1 through 28-16.  Petitioner filed a reply

on July 24, 2019.  ECF No. 29.  The motion to dismiss was denied on

---

[1] The initial petition was dismissed without prejudice due to a clerical error
regarding the filing fee, ECF No. 10, but was reopened.  ECF No. 14.

August 29, 2019.  ECF No. 35.  Respondent filed an answer on August 29, 2019.  ECF No. 34.  Petitioner was given leave to file a reply (ECF No. 36) but did not to do so.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B).  After careful consideration of all the issues raised, the undersigned has determined that no evidentiary hearing is required for disposition of this case.  *See* Rule 8(a), R. Gov. § 2254 Cases in U.S. Dist. Cts.  For the reasons set forth herein, the pleadings and attachments before the Court show that Petitioner is not entitled to federal habeas relief and this § 2254 petition should be denied.

## Background and Procedural History

Petitioner was charged in the Circuit Court of Leon County, Florida with four counts: Count I, second-degree felony murder on January 12, 2010; Count II, attempted armed robbery with a firearm on January 12, 2010; Count III, armed robbery with a firearm on January 13, 2010; and Count IV, Burglary of a conveyance on January 13, 2010.  Ex. A at 25-29. Petitioner was tried on June 29, 2011, and found guilty as charged in Counts II and III, and guilty of the lesser offense of burglary of a

conveyance while armed with a firearm in Count IV.  Ex. A at 235-38.[2]  The jury found that Petitioner possessed a firearm with regard to Counts II, III, and IV.  The jury deadlocked on Count I and Petitioner was retried on that count on September 14, 2011.  He was found guilty as charged of second-degree felony murder with the specific finding that he discharged a firearm.  Ex. A at 289-90.

Petitioner was sentenced as a prison releasee reoffender under section 775.082(8), Florida Statutes, to fifteen years in prison for Count II and to life in prison in Counts III and IV, with a ten-year firearm minimum mandatory sentence under section 775.087, Florida Statutes.  Ex. A at 244-45.  Petitioner was also sentenced to life in prison on Count I, with a twenty-year minimum mandatory term pursuant to section 775.087, Florida Statutes.  Ex. A at 291-300.

Petitioner appealed to the First District Court of Appeal where counsel filed an Anders brief in case number 1D11-4286.[3]  Petitioner's counsel raised two sentencing errors in a motion under Florida Rule of

---

[2] Hereinafter, citations to the state court record, "Ex. –," refer to Exhibits A through N submitted in conjunction with Respondent's motion to dismiss.  *See* ECF No. 28, 28-1 through 28-16.  Respondent's filing of the electronic record divided into alphabetical sections for ease of reference is appreciated.

[3] Anders v. California, 386 U.S. 738, 744 (1967) (holding that when appointed counsel finds the appeal to be frivolous, counsel should so advise the court after a conscientious examination of the record and reference to anything in the record that might support an appeal, and counsel may request permission to withdraw).

Criminal Procedure 3.800(b) concerning costs and offense classification for second-degree murder.[4]  Ex. D, E at 54-59.  The appellate court affirmed the judgments on April 16, 2013, but remanded to the trial court to strike the $20 surcharge and to correct the judgment and sentence to reflect that the second-degree murder conviction was a first-degree felony punishable by life in prison.  Ex. F.  Mandate was issued on May 14, 2013.  *See* Baity v. State, 111 So. 3d 267 (Fla. 1st DCA 2013) (Mem).  Ex. F.

On May 9, 2014, Petitioner filed a pro se motion for post-conviction relief under Florida Rule of Criminal Procedure 3.850 alleging three claims.[5]  Ex. G at 3-12.  The court summarily denied Claim 1 as refuted by the record and set an evidentiary hearing on Claims 2 and 3.  Ex. G at 23-63.  An evidentiary hearing was held on March 2, 2015.  Ex. G at 70-106.  The post-conviction judge denied the motion on the record and advised Petitioner that a written order would follow.  Ex. G at 105.

Due to untimely issuance of the written order to Petitioner, he filed a Petition for Writ of Habeas Corpus for Belated Appeal in the First District

---

[4] Petitioner was given leave to file a pro se brief, but failed to do so.  Even so, "the appellate court is to conduct its full and independent review even if the indigent elects not to file a pro se brief."  In re Anders Briefs, 581 So. 2d 149, 151 (Fla. 1991).

[5] The three claims raised in the post-conviction motion were: (1) ineffective assistance of trial counsel by failing to confront co-defendant regarding his motive to testify; (2) ineffective assistance of trial counsel by interference with Petitioner's right to testify; and (3) ineffective assistance of trial counsel by failing to object to the prosecutor's conflict of interest and/or bias.  Ex. G at 3-12.

Court of Appeal pursuant to Florida Rule of Appellate Procedure 9.141(c).

Ex. H.  Belated appeal was granted after it was recommended by the post-conviction court judge sitting as a special master, and briefing was ordered.

Exs. I, J.  *See* <u>Baity v. State</u>, 191 So. 3d 1006 (Fla. 1st DCA 2016) (Mem).

Petitioner filed a pro se initial brief appealing denial of all three post-conviction claims, Ex. K, and the State filed an answer brief.  Ex. L.  The First District Court of Appeal affirmed per curiam without opinion on October 26, 2017.  The mandate was issued on December 22, 2017.

Ex. M.  *See* <u>Baity v State</u>, 236 So. 3d 346 (Fla. 1st DCA 2017) (Table).

Petitioner filed his amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this Court raising the following grounds for relief:

(1)  Whether defense counsel rendered ineffective assistance in advising him regarding his decision to testify;

(2)  Whether the trial court erred in sentencing Petitioner under the Prison Releasee Reoffender Act without proper documentation and proof;

(3) Whether defense counsel rendered ineffective assistance by failing to move to sever the two robbery cases;

(4) and (5) Whether the trial judge improperly questioned jurors and whether allowing jurors to pose questions pursuant to Florida Rule of Criminal Procedure 3.371 violated Petitioner's due process right and constitutional right to a fair trial;

(6) Whether defense counsel rendered ineffective assistance by failing to seek removal of the prosecutor because Petitioner was suing the prosecutor's father, who was the Sheriff.

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and

Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant

habeas corpus relief for persons in state custody only under certain

specified circumstances.  Section 2254(d) provides in pertinent part:

> An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not
> be granted with respect to any claim that was adjudicated on
> the merits in State court proceedings unless the adjudication of
> the claim—
>
> > (1) resulted in a decision that was contrary to, or
> > involved an unreasonable application of, clearly
> > established Federal law, as determined by the
> > Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an
> > unreasonable determination of the facts in light of
> > the evidence presented in the State court
> > proceeding.

28 U.S.C. § 2254(d).  *See also* Cullen v. Pinholster, 563 U.S. 170, 181

(2011); Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011).

"Under the 'contrary to' clause, a federal habeas court may grant the

writ if the state court arrives at a conclusion opposite to that reached by this

Court on a question of law or if the state court decides a case differently

than this Court has on a set of materially indistinguishable facts."  Williams

v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring).  "Under

the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413 (O'Connor, J., concurring).

The Supreme Court has explained that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Harrington v. Richter, 562 U.S. 86, 102 (2011).  The Court stated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. . . .  It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no further.  Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. Jackson v. Virginia, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in judgment).  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Id.* at 102-03 (citation omitted).  The federal court employs a " 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.' "  Pinholster, 563 U.S. at 181 (quoting Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).

"Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b).  The Petitioner must have apprised the state court of the federal constitutional claim, not just the underlying facts of the claim or a "somewhat similar state-law claim." Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir. 1998) (quoting Anderson v. Harless, 459 U.S. 4, 5-6 (1982)).  In order for remedies to be exhausted, "the petitioner must have given the state courts a 'meaningful opportunity' to address his federal claim." Preston v. Sec'y, Fla. Dep't of Corr., 785 F.3d 449, 457 (11th Cir. 2015) (quoting McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005)).  Petitioner must "fairly present" his claim in each appropriate state court in order to alert the state courts to the federal nature of the claim.  Duncan v. Henry, 513 U.S. 364, 365 (1995); Picard v. Connor, 404 U.S. 270, 275 (1971); O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).  The State must have been provided the " 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights."  Henry, 513 U.S. at 365 (quoting Picard, 404 U.S. at 275 (citation omitted)).  "This rule of comity reduces friction between the state and federal court systems by avoiding the 'unseem[liness]' of a federal district court's overturning a state court conviction without the state courts

having had an opportunity to correct the constitutional violation in the first instance." O'Sullivan, 526 U.S. at 845; *see also* Picard, 404 U.S. at 275 ("If the exhaustion doctrine is to prevent 'unnecessary conflict between courts equally bound to guard and protect rights secured by the Constitution,' it is not sufficient merely that the federal habeas applicant has been through the state courts." (citation omitted)).

In regard to claims of ineffectiveness of trial counsel, the Petitioner must have presented those claims in state court " 'such that a reasonable reader would understand each claim's particular legal basis and factual foundation.' " Ogle v. Johnson, 488 F.3d 1364, 1368 (11th Cir. 2007) (citing McNair, 416 F.3d at 1302).

In order to obtain review where a claim is unexhausted and, thus, procedurally defaulted, the Petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice. Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993). In order to demonstrate cause, Petitioner must show that an "external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." Alderman v. Zant, 22 F.3d 1541, 1551 (1994) (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)); *see also* McCleskey v. Zant, 499 U.S. 467, 497

(1991) (emphasizing that the external impediment must have prevented the petitioner from raising the claim).  A federal court may grant a habeas petition on a procedurally defaulted claim without a showing of cause or prejudice if necessary to correct a fundamental miscarriage of justice. Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003).  In order to satisfy the miscarriage of justice exception, the Petitioner must show that a constitutional violation has occurred that "probably resulted in a conviction of one who is actually innocent"—that it is more likely than not that no reasonable juror would have convicted him—which is a stronger showing than is necessary to establish prejudice.  *See* Schlup v. Delo, 513 U.S. 298, 327 (1995).  This standard "thus ensures that petitioner's case is truly 'extraordinary.' " *Id.* (citing McCleskey, 499 U.S. at 494).  Such a case is "extremely rare." Schlup, 513 U.S. at 324.

This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." Pinholster, 563 U.S. at 181. The state court's factual findings are entitled to a presumption of correctness and to rebut that presumption, the Petitioner must show by clear and convincing evidence that the state court determinations are not fairly supported by the record.  *See* 28 U.S.C. § 2254(e)(1).  However, "it is not the province of a federal habeas court to reexamine state-court

determinations on state-law questions" and "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  *See also* Swarthout v. Cooke, 562 U.S. 216, 222 (2011) ("[W]e have long recognized that 'a "mere error of state law" is not a denial of due process.' " (quoting Engle v. Isaac, 456 U.S. 107, 121, n.21 (1982))).

Further, under § 2254(d), federal courts have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." Marshall v. Lonberger, 459 U.S. 422, 434 (1983).  "Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review." Consalvo v. Sec'y, Dep't of Corr., 664 F.3d 842, 845 (11th Cir. 2011).  Credibility and demeanor of a witness are considered to be questions of fact entitled to a presumption of correctness under the AEDPA and the Petitioner has the burden to overcome the presumption by clear and convincing evidence.  *Id.*

For claims of ineffective assistance of counsel, the United States Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so

serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).  To demonstrate deficient performance, a "defendant must show that counsel's performance fell below an objective standard of reasonableness."  *Id.* at 688.  Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Burt v. Titlow, 134 S. Ct. 10, 17 (2013) (quoting Strickland, 466 U.S. at 690).  Federal courts are to afford "both the state court and the defense attorney the benefit of the doubt."  *Id.* at 13.  The reasonableness of counsel's conduct must be viewed as of the time of counsel's conduct.  *See* Maryland v. Kulbicki, 136 S. Ct. 2, 4 (2015) (citing Strickland, 466 U.S. at 690).

To demonstrate prejudice under Strickland, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*  For this Court's purposes, "[t]he question 'is not whether a federal court believes the state court's determination'

under the Strickland standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' " Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)). "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Mirzayance, 556 U.S. at 123. It is a "doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard." *Id.* Both deficiency and prejudice must be shown to demonstrate a violation of the Sixth Amendment. Thus, the court need not address both prongs if the petitioner fails to prove one of the prongs. Strickland, 466 U.S. at 697.

## Ground 1: Petitioner's Decision Not to Testify

Petitioner contends that defense counsel rendered ineffective assistance by misadvising him regarding his decision to testify. ECF No. 22 at 7; ECF No. 23 at 10. Petitioner argues that his trial counsel told him that if he testified, the prosecutor could produce specific details concerning his past criminal convictions. ECF No. 23 at 11. He contends that but for this misadvice, he would have testified as to his involvement in the robbery and the fact that he left the scene before the robbery victim was

accidentally run over by a car driven by a third-party present at the scene. *Id.* at 11.

Petitioner raised a similar claim of misadvice in ground two of his motion for post-conviction relief filed in the trial court. Ex. G at 8-9. He argued there that if his counsel had properly advised him that the jury could only hear of the fact of prior convictions and not the details, he would have testified and his testimony would have given the jury a reason to doubt the State's argument that his cell phone found at the scene of the death was evidence of his presence there and his guilt. Ex. G at 9.

An evidentiary hearing was held on this claim on March 2, 2015. Ex. G at 70-108. Petitioner testified that when he talked to his defense counsel one or two months before trial about the decision to testify, his counsel advised him that the prosecutor would be able to get into the details of his criminal history. *Id.* at 74, 76, 83. Petitioner further testified:

> A. Well he told me that if I - - if I testified that the, I guess, the State would be able to bring up my criminal past, things that I did in my criminal past or whatever and that - - and that wouldn't look good in a jury's eyes. But I felt like if I would have testified to my - - in my own behalf, the jury would have had a different outlook because they would have actually known my - - accompany in whatever I did during these criminal proceedings.
>
> Q [prosecutor]. I got you. And I need to - - words are going to be - - as best you can recall, did he say that they would

be able to bring up your criminal past or how exactly did he phrase that with you"

A.  Well, you know, it's been a while.  But, if I'm not mistaken, it was like he would be able to bring up your criminal history and things that you did in your past as far as your criminal history goes.

. . . .

A.  The - - the way that it was relayed to me, Your Honor, was that, if I took the stand to testify on my own behalf, that all my criminal past would be brought up to the  - - to the jury. . . .

Ex. G at 76-77, 83.  He further testified that his defense counsel indicated "in a round-about way," and Petitioner was "under the impression," that the prosecutor was going to be able to go into detail about what Petitioner was convicted of in the past.  *Id.* at 84.  Petitioner further testified that he never again spoke to his defense counsel about the decision whether to testify, not even during trial, but he agreed he was asked by the judge at trial about whether the he had discussed his decision not to testify with his lawyer.  *Id.* at 79-80.  At trial, he advised the court under oath that it was his decision not to testify.[6]  *Id.* at 80.

---

[6] These questions and answers at the evidentiary hearing referred to the colloquy at the first trial in July 2011, at which the jury ultimately could not agree on the verdict for Count I, second-degree felony murder.  Ex. B at 316-17.  At the retrial of Count I in September 2011, Petitioner's defense counsel was asked if he discussed with Petitioner the decision whether to testify, to which counsel responded that he had spoken to Petitioner.  Ex. C at 266.  Petitioner was placed under oath and after being advised by the court that it was his decision alone whether to testify, Petitioner again advised the court that he did not wish to testify.  Ex. C at 267-68.

Petitioner's trial counsel testified at the evidentiary hearing that he tells his clients that "if you take the stand, know that if I tell you you've been convicted X number of times and you say Y that the State can sit there and they can bludgeon you across the head with respect to the prior cases you've had." Ex. G at 91-92. When asked if, other than the warning he related, defense counsel told Petitioner that the State could bring in the details of his prior crimes, counsel answered, "No. That's exact - - he got the same speech [as] everybody else. Absent him screwing up the actual count, the State would only be able to ask him how many times he's been convicted of felonies or misdemeanor crimes of dishonesty." Ex. G at 92, 95. Counsel testified that he never tried a case without discussing the decision to testify with the client during trial. *Id.* Defense counsel denied ever telling Petitioner he could not testify. *Id.* at 93. He did not recall Petitioner ever expressing a desire to testify. *Id.* at 94.

The post-conviction court denied the claim on the record, essentially finding counsel's testimony credible as to what he advised Petitioner and concluded that Petitioner may have misunderstood what counsel told him concerning the decision whether to testify. Ex. G at 104-05. The court found that any misunderstanding was not counsel's fault. *Id.* at 105. The court's written order adopted the reasons set forth on the record. *Id.* at 69.

Petitioner appealed denial of this claim to the First District Court of Appeal, which affirmed without explanation on October 26, 2017.  Ex. M.  *See* Baity v. State, 236 So. 3d 346 (Fla. 1st DCA 2017) (Table).

"Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review." Consalvo, 664 F.3d at 845.  Credibility and demeanor of a witness are considered to be questions of fact entitled to a presumption of correctness under the AEDPA and the Petitioner has the burden to overcome the presumption by clear and convincing evidence.  *Id.* at 845.  Under § 2254(d), federal courts have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."  Lonberger, 459 U.S. at 434.  In light of the testimony, the post-conviction court's credibility determination and conclusion that trial counsel did not misadvise Petitioner are not objectively unreasonable.

Further, Petitioner's testimony of what he would have told the jury failed to demonstrate a reasonable probability—one sufficient to undermine confidence—that but for the alleged misadvice, the outcome of the trial would have been different.  Petitioner has given several different versions of his proposed testimony.  He stated in his motion that he would testify "to his involvement in the charged offenses, that he did know and associate

with the co-defendant, and that his cell phone [which was found at the scene of the death] had gone missing around the time that co-defendant visited him prior to the robbery."  He argued that this testimony would have given the jury reason to doubt he was present at the scene.  Ex. G at 9.  At the evidentiary hearing, Petitioner did not state specifically what testimony he would have provided at trial.  In his § 2254 petition he alleges he would have testified as to "his involvement in the robbery and the fact that they had departed from the premises prior to Ms. Bollivar running Mr. Sharp over."  ECF No. 23 at 11.  He argues, albeit incorrectly, that this testimony would have negated the felony murder charge.

Section 782.04(3), Florida Statutes, under which Petitioner was charged and convicted, provides in pertinent part that it is an unlawful killing when a person is killed during the perpetration or attempted perpetration of specified offenses, including attempted robbery, "by a person other than the person engaged in the perpetration of or in the attempt to perpetrate such felony . . . ." (emphasis added).  Pursuant to the statute, to be guilty of second-degree felony murder the following elements must be present: (1) the victim is dead; (2) the defendant was not the person who actually killed the victim, but he or she did commit or did knowingly aid, abet, counsel, hire, or otherwise procure the commission of

a felony; (3) the victim's death was caused during and was the consequence of the commission, or the escape from the immediate scene, of the felony; and (4) the person who actually killed the victim was not involved in the commission of the felony.  Dean v. State, 230 So. 3d 420, 423 (Fla. 2017).  The Florida Supreme Court has held that "a verdict of guilty for second-degree felony-murder does not require the defendant's presence."  State v. Lowery, 419 So. 2d 621, 623 (Fla. 1982) (overruling Hite v. State, 364 So. 2d 771 (Fla. 2d DCA 1978) on that point).

Moreover, proposed testimony that Petitioner participated in the attempted robbery but left the scene before the death occurred does not undermine confidence in the guilty verdict for second-degree felony murder, especially in light of the police interview with Petitioner that was played for the jury and in light of Ms. Bollivar's testimony.  In the police interrogation, Petitioner admitted going to the scene to rob someone and, once there, beating the victim behind Ms. Bollivar's vehicle.  He admitted that his gun went off, and that shortly thereafter, he fled in a vehicle.  Ms. Bollivar testified that after gunshot, she attempted to leave and while backing up her vehicle, unfortunately ran over the victim.  She testified that as she was backing up and felt a bump, she saw Petitioner's car speeding away.  Ex. C at 41, 54-55 (September 13, 2011, trial transcript).  Thus, the

jury heard the same evidence that Petitioner argues he would have presented if he had testified.

Neither deficiency nor prejudice under the standards required by Strickland have been established.  The state court's adjudication has not been shown to be unreasonable in light of the record in this case.  As noted earlier, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' " Mirzayance, 556 U.S. at 123 (quoting Schriro, 550 U.S. at 473).  For these reasons, habeas relief on Ground 1 should be denied.

### Ground 2: Prison Releasee Reoffender Sentence

Petitioner next contends that the trial court erred in sentencing him as a Prison Releasee Reoffender without proper documentation and proof that he qualified.  ECF No. 22 at 9; ECF No. 23 at 13.  He argues that a Department of Corrections printout without any photograph or fingerprints is insufficient proof under section 775.082(9), Florida Statutes.  Respondent contends that Petitioner failed to exhaust this claim in state court because it was not raised at sentencing, in his direct appeal, or in Petitioner's Rule 3.850 motion.  ECF No. 34 at 26.  Respondent further argues that Petitioner has not demonstrated cause for the failure to raise the claim or

actual innocence as required to avoid the bar; and that the claim may not now be raised in state court. It should also be noted that a claim that the state court failed to adhere to its own sentencing procedures is a state law issue that cannot be reviewed in federal habeas proceedings. *See* Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988). Only if an error rises to the level of fundamental unfairness does it implicate the federal constitutional due process rights of an individual to be determined on habeas review by this Court, Osborne v. Wainwright, 720 F.2d 1237, 1238 (11th Cir. 1983), and nothing has been alleged to indicate that fundamental unfairness occurred in the sentencing procedures implemented below. Regardless of any procedural default or lack of cognizability, the claim is without merit and should be denied.

At the sentencing hearing on Counts II through IV held July 19, 2011, the State submitted evidence of Department of Corrections records that indicate Petitioner was released from prison on June 28, 2008, and the offense date in the present case was January 12-13, 2010. Ex. A at 265-66. These documents are in the record and consist of a Certification of Records by the records custodian of the Florida Department of Corrections, "Photo Identification Card" for Christopher J. Baity, and "Overall Inmate Record as of 02/01/10." Ex. B (nine unnumbered pages following Ex. B

436).  When the records were offered, defense counsel voiced no objection to the proof.  *Id.* at 266.

At the sentencing following the September 2011 retrial on Count I, the judge asked Petitioner directly if he contested that he was released from prison within three years of the offense.  Ex. C at 351.  Petitioner responded, "No, sir."  *Id.*  Defense counsel also stated to the court that it had been stipulated that Petitioner was released from prison within the three-year period.  Counsel also explained that Petitioner was aware of the issue due to "the plea negotiations that we were doing up until the last minute last week in terms of what the possible ranges could be if we were found guilty today, Your Honor."  Ex. C at 351.

Section 775.082(9), Florida Statutes, defines a prison releasee reoffender as a person who commits or attempts to commit a specified offense, including robbery, within three years after release from a correctional institution following incarceration for an offense the sentence for which was more than one year.  When a prosecutor proves by a preponderance of the evidence that the defendant is a prison releasee reoffender, the person must be sentenced to enhanced terms as set forth in the statute.  § 775.082(9)(a)3, Fla. Stat. (2011).

Because proof was submitted and Petitioner stipulated that the offense occurred within three years of his release from prison, Petitioner's claim that proof was never submitted that he qualified as a prison releasee reoffender is without merit. Petitioner has failed to demonstrate that his sentence, or the sentencing proceeding, was contrary to or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States, or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *See* 28 U.S.C. § 2254(d). Habeas relief on Ground 2 should be denied.

### Ground 3: Ineffective Assistance of Counsel Regarding Severance

Petitioner contends in this ground that defense counsel rendered ineffective assistance by failing to move to sever the burglary and robbery charges relating to victim Zhamukhanov that occurred on January 13, 2010, from the second-degree felony murder and attempted robbery charges involving victim Sharp that occurred on January 12, 2010 . ECF No. 22 at 10; ECF No. 23 at 14. He argues that the cases were unrelated.

Respondent contends that the claim is unexhausted because Petitioner failed to raise it in the state court. ECF No. 34 at 32. Respondent is correct that the state court was never presented with the

opportunity to rule on this claim.  Petitioner has failed to allege any basis to excuse the default and has cited no cause, that is, an "external impediment" that prevented him from raising the claim, or prejudice. Alderman, 22 F.3d at 1551; Carrier, 477 U.S. at 488; McCleskey, 499 U.S. at 497.  Nor has he shown any basis to find review is necessary to correct a fundamental miscarriage of justice.  Henderson, 353 F.3d at 892. Petitioner has not shown a constitutional violation has occurred that "probably resulted in a conviction of one who is actually innocent"—which is a stronger showing than is necessary to establish prejudice.  *See* Schlup, 513 U.S. at 327.  Notwithstanding the procedural default, the claim is without merit and should be denied.[7]

Two cases were originally generated for the offenses that occurred on January 12, 2010, and January 13, 2010.  The State filed a motion to consolidate the charges on July 12, 2010, arguing that the cases were related because while they occurred on two separate calendar dates, they were only five hours apart in the same general vicinity of Leon County. Ex. A at 160-61.  The first two offenses, in which the attempted robbery

---

[7] Denial of Petitioner's unexhausted § 2254 claim on the merits is specifically anticipated by 28 U.S.C. § 2254(b)(2), which provides that "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust remedies available in the courts of the state."

was unsuccessful, occurred around 11 p.m. and the second set of offenses in which another individual was robbed, occurred around 3:30 a.m. the next morning.  Ex. B at 71, 129-30.  A codefendant was involved with Petitioner in committing both sets of offenses and Petitioner admitted his involvement in both.  *Id.* at 161; Ex B at 128.  Co-defendant Gaines testified at trial that he and Petitioner decided to commit robbery the night of January 12, 2010, and after the first unsuccessful attempt, they drove around looking for someone else to rob.  Ex. B at 122-23; 127-28.  An order on the motion for consolidation does not appear in the record before this Court, but Counts I through IV were tried together on July 28, 2011.  Ex. B.

Petitioner has not alleged any basis to conclude that even if counsel had moved to sever trial of the offenses occurring on January 12, 2010, from those occurring on January 13, 2010, such motion would have been granted.  Florida Rule of Criminal Procedure 3.151(a) provides that two or more offenses are related if they are triable in the same court and "are based on the same act or transaction or on 2 or more connected acts or transactions."  The rule provides that two or more indictments or informations charging related offense "shall be consolidated for trial on a timely motion by a defendant or by the state."  Fla. R. Crim. P. 3.151(b).

Under Florida law, there must be meaningful relationship between the charges before they can be tried together, Lugo v. State, 845 So. 2d 74, 93 (Fla. 2003), but the State can demonstrate that meaningful relationship by showing an uninterrupted crime spree or causal link irrespective of the passage of time.  Ellis v. State, 622 So. 2d 991, 1000 (Fla. 1993).  Courts can consider whether the acts are temporally or geographically associated, the nature of the crimes, and the manner of commission.  Lindsey v. State, 220 So. 3d 1255, 1257 (Fla. 1st DCA 2017) (citing Fletcher v. State, 168 So. 3d 186, 202 (Fla. 2015)).  All these factors were present in the instant case and supported the trial court's granting of the motion for consolidation.  Further, these factors militate against the success of any motion to sever that counsel might have filed.

Finally, motions for severance are addressed to the sound discretion of the trial judge and would be overturned only if discretion was abused.  Crossley v. State, 596 So. 2d 447, 450 (Fla. 1992).  Petitioner has not demonstrated that his counsel was deficient in failing to move to sever because under Florida law, the trial court had sound reasons for granting the State's motion for consolidation.  Nor has Petitioner identified facts showing a reasonable probability that, but for counsel's alleged error, the result of the trial would have been different.  It is noteworthy that prior to

trial the State filed a Notice of Similar Fact Evidence pursuant to section

90.404(2), Florida Statutes, seeking to introduce evidence of other crimes,

those being the two robberies, because they are relevant to prove motive,

opportunity, intent, plan, knowledge, identity, and absence of mistake.  Ex.

A at 168.  Thus, even if the offenses had not been tried together, there is

every likelihood that the evidence of the crimes occurring on January 13,

2010, shortly after the crimes on January 12, 2010, would have been

admissible in a separate trial.

For all these reasons, Petitioner has failed to satisfy either prong of

Strickland.  Petitioner cannot show that the adjudication of the state court

resulted in a decision that is contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the

Supreme Court of the United States, or was based on an unreasonable

determination of the facts in light of the evidence presented in the State

court proceeding.  *See* 28 U.S.C. § 2254(d).  Accordingly, habeas relief on

Ground 3 should be denied.

## Grounds 4 and 5: Questions Posed by Jurors

In these two related grounds, Petitioner contends that the trial judge

improperly questioned jurors and that allowing jurors to pose questions

pursuant to Florida Rule of Criminal Procedure 3.371 violated Petitioner's

due process right and his right to a fair trial.  ECF No. 22 at 12, 13; ECF

No. 23 at 16, 17.  Petitioner does not identify any specific questions either

from the judge or the jury that he alleges violated his rights, but asserts that

the rule of criminal procedure that allows jurors to pose questions is

unconstitutional because it allows the jurors to usurp the role of the

prosecutor or defense attorney.  ECF No. 23 at 18.  Respondent contends

that the claim is unexhausted because Petitioner failed to raise it in state

court and no cause or prejudice has been shown to excuse the default.

ECF No. 34 at 38-39.  Notwithstanding any procedural default, the claim is

without merit and should be denied.

Florida Rule of Criminal Procedure 3.371 provides:

> **(a) Judicial Discretion.** At the discretion of the presiding trial judge, jurors may be allowed to submit questions of witnesses during the trial.

> **(b) Procedure.** The trial judge shall utilize the following procedure if a juror indicates that the juror wishes to ask a question:

> (1) the questions must be submitted in writing;

> (2) the trial judge shall review the question outside the presence of the jury;

> (3) counsel shall have an opportunity to object to the question outside the presence of the jury;

> (4) counsel shall be allowed to ask follow up questions; and

> (5) the jury must be advised that if a question submitted by a juror is not allowed for any reason, the juror must not

discuss it with the other jurors and must not hold it against
either party.

Fla. R. Crim. P. 3.371.  The Florida Supreme Court has long held that

allowing juror questions, in the sound discretion of the trial judge, does not

violate the defendant's right to an impartial jury.  Watson v. State, 651 So.

2d 1159, 1163 (Fla. 1994) (citing Shoultz v. State, 106 So. 2d 424, 426

(Fla. 1958), and Ferrara v. State, 101 So. 2d 797, 801 (Fla. 1958)).

Petitioner has not identified any decisions of the United States

Supreme Court holding that the procedure allowing jurors to submit

questions in a criminal trial violates due process or the right to an impartial

jury.  The Eleventh Circuit has explained:

> [E]very circuit to consider the practice has permitted it, holding
> that the decision to allow juror questioning rests within the
> discretion of the trial judge.  *See* United States v. Collins, 226
> F.3d 457 (6th Cir. 2000); United States v. Hernandez, 176 F.3d
> 719, 724 (3d Cir. 1999); United States v. Feinberg, 89 F.3d
> 333, 336 (7th Cir. 1996); United States v. Bush, 47 F.3d 511,
> 515 (2d Cir. 1995); United States v. Cassiere, 4 F.3d 1006,
> 1017-18 (1st Cir. 1993); United States v. Groene, 998 F.2d 604,
> 606 (8th Cir. 1993) ("The use of the procedure itself is not plain
> error (prejudicial per se)."); United States v. Polowichak, 783
> F.2d 410, 413 (4th Cir. 1986); United States v. Callahan, 588
> F.2d 1078, 1086 (5th Cir. 1979) ("There is nothing improper
> about the practice of allowing occasional questions from jurors
> to be asked of witnesses.").  In addition, virtually every state
> court to consider the issue has permitted jurors to ask
> questions of witnesses, and the legislatures of Arizona and
> Florida have enacted statutes specifically mandating the
> practice.  Ariz. R. Ct. 39(b)(10); Fla. Stat. ch. 40.50(3).

In American jurisprudence, a jury serves to "assure a fair and equitable resolution of factual issues." Standard Oil Co. of Cal. v. Arizona, 738 F.2d 1021, 1031 (9th Cir. 1984) (quoting Colgrove v. Battin, 413 U.S. 149, 157, 93 S. Ct. 2448, 37 L.Ed.2d 522 (1973)). In order to discharge this duty, it is incumbent upon jurors to listen to the evidence, taking care to understand it so that the facts can be determined and then applied to the relevant law. The underlying rationale for the practice of permitting jurors to ask questions is that it helps jurors clarify and understand factual issues, especially in complex or lengthy trials that involve expert witness testimony or financial or technical evidence. If there is confusion in a juror's mind about factual testimony, "it makes good common sense to allow a question to be asked about it." Callahan, 588 F.2d at 1086. "Juror-inspired questions may serve to advance the search for truth by alleviating uncertainties in the jurors' minds, clearing up confusion, or alerting the attorneys to points that bear further elaboration." United States v. Sutton, 970 F.2d 1001, 1005 n.3 (1st Cir. 1992).

United States v. Richardson, 233 F.3d 1285, 1289-90 (11th Cir. 2000) (footnotes omitted).

Petitioner has also failed to identify any specific juror questions that rendered his trial unfair. The judge instructed the jury prior to any testimony in both trials that they may be allowed to ask questions only to clarify the evidence and not to comment on the evidence. Ex. B at 23-25; Ex. C at 16-18 (transcript pagination of trial of September 13, 2011). In the first trial, the judge asked several juror-initiated questions of witness Bollivar, who was driving the vehicle that backed over the victim:

> **THE COURT**: Were you using any kind of intoxicants that night, drugs or alcohol?

> **THE WITNESS**:  No.
>
> **THE COURT**:  Were your car windows tinted?
>
> **THE WITNESS**:  Not very dark at all.
>
> **THE COURT**: Could you tell whether the other vehicle's windows were tinted or not?
>
> **THE WITNESS**:  I don't remember.

Ex. B at 60.  There were no objections and no follow up questions from counsel.  The court received a juror question for the first deputy on the scene regarding whether substance abuse testing was done following the incident, but elected to hold it for the homicide investigator's testimony.

Ex. B at 75-76.  A juror question was posed to deputy Kellerman, a traffic homicide investigator and traffic crash reconstruction expert, after he testified about how the death occurred when Ms. Bollivar backed over the victim in an attempt to escape the robbery and altercation:

> **THE COURT**:  . . . . Were there brake marks at the location where it would appear that the vehicle backing up had struck Mr. Sharp?  Were there brake marks in that area?
>
> **THE WITNESS**:  There was tire marks that were like as a set of tire mark where the vehicle passed over him, it appeared to stop and then backed up to where it was. . . .
>
> **THE COURT**: But there wasn't any - - was there any physical evidence of a sudden stop or anything of that nature?
>
> **THE WITNESS**:  No, sir.  There was not.
>
> **THE COURT**:  And you mentioned that then the vehicle backed up further.  How far was it from where Mr. Sharp's body was located to where the vehicle ended up when you arrived there?

**THE WITNESS**:  Approximately 130 feet.

Ex. B at 112-13.  The prosecutor followed up with several questions about the location of the vehicle and defense counsel had no follow up.  No objection was lodged to the questions.

A juror question was posed, without objection, to the victim of the January 13, 2010, robbery:

> **THE COURT**:  Just a couple of questions from the jury. Did you call the police at some point in time?
> **THE WITNESS**:  Yes, sir, that morning.
> **THE COURT**:  The next morning?
> **THE WITNESS**:  Yes, sir.

Ex. B at 169 (Volume II of July 28, 2011, trial).  The prosecutor asked several follow-up questions to clarify what day the robbery was reported. *Id.* at 170.  Defense counsel asked several follow-up questions.  *Id.* at 171-72.  During the examination of Detective Pearson, whose interview with Petitioner was played for the jury, the court posed the following juror questions without objection:

> **THE COURT**: Were all four of the individuals [identified as participants in the attempted robbery, including Petitioner] charged with murder and attempted robbery?
> **THE WITNESS**: I'm not exactly sure what all the charges were, sir.
> **THE COURT**: All right.  You weren't involved in making any arrests?
> **THE WITNESS**:  No, sir.

**THE COURT**:  Okay, do you know what day of the week January 12, 2010, was?

**THE WITNESS**:  I do not.  Not right offhand, no, sir.

**THE COURT**:  Do you have any information that Mr. Sharp [the victim] was armed with any weapons on that night?

**THE WITNESS**: To my understanding, he was not; that they didn't find any weapons on scene.

Ex. B at 284 (Vol. II).  The prosecutor asked several follow up questions eliciting testimony that the three other individuals were charged but the witness did not specify what charges.  *Id.* at 284-85.  Defense counsel also asked some follow up questions to clarify the day of the week on which the offenses of January 12, 2010, occurred.  *Id.* at 286.

During the retrial in September 2010 on the second-degree felony murder charge, the judge posed several juror questions to witnesses. Ms. Bollivar was presented with the following juror questions:

**THE COURT**:  Ms. Bollivar, this is just a question from the jury to clarify the sequence of events.  You hear tussling behind your vehicle or in the area towards the back of your vehicle What happens next?

**THE WITNESS**:  After I hear the tussling?

**THE COURT**:  Right.

**THE WITNESS**: That's when the gunshot got fired.

**THE COURT**: All right.  And then what happened after you heard the gunshot?

**THE WITNESS**: Right after I heard the gunshot, it was, Go, Amanda, go [by the victim Sharp], and people were fleeing the scene.

> **THE COURT**: Okay. So, the gunshot and then the, Go,
> Amanda, go is the sequence of events?
>
> **THE WITNESS**: Correct.

Ex. C at 54-55 (Vol. I, September 13, 2011, trial).  No objections were

made and no follow up questions were asked by either counsel.

During his testimony, the homicide investigator/traffic crash expert

Kellerman testified that the catalytic converter on Ms. Bollivar's vehicle was

dented and had burnt tissue on it due to how hot it was when the vehicle

was on.[8]  *Id.* at 93. He was asked the following jury questions without

objection:

> **THE COURT**: A couple of follow-up questions from the
> jury, deputy.  You had indicated that the catalytic converter had
> caused some skin damage, I believe was your testimony.  How
> long would the car have to be on in order for it to get hot
> enough to burn the skin?
>
> **THE WITNESS**:  It depends on the vehicle itself, the
> condition of the motor vehicle as far as the engine.  In this case
> it was an older vehicle.  Catalytic converters tend to have the - -
> I'm sorry.  I drew a blank.
>
> There's a metallic substance in the catalytic converter.
> As it gets older, it breaks down, it collects heat faster.  So, a
> new catalytic converter won't get as hot as fast as the one that

---

[8] Homicide Investigator Kellerman also testified that the victim's handprints on the back bumper of Ms. Bollivar's vehicle indicated that he was probably squatting behind the vehicle after the tussle with Petitioner and, when she backed up, he was pushed over and under the vehicle. Ex. C at 102 (Vol. II).  Evidence on the undercarriage of the vehicle was consistent with the body having rubbed against it as the car passed over.  *Id.* at 93.  The medical examiner testified that a tire had run over the victim's chest, fractured his ribs, and tore his lung on the left.  *Id.* at 151.  A portion of his pelvis showed signs of having been crushed by the vehicle and his spine was fractured.  *Id.* at 153, 157.

has been on a vehicle for two years or five years.  So, this - - if this motor vehicle had been running for a period of time, the catalytic converter would have been hot.  If the motor vehicle had been running for 10 minutes, it could have been hot.

**THE COURT**: Were you able to determine whether the car was already on prior to the - - prior to the incident or not?

**THE WITNESS**: . . . information I received from Deputy Farcas, the vehicle had been running.  With the temperature that it was that night, it was 34 degrees when the incident occurred, so if people were sitting in a car, even sitting outside having a conversation - - I know when we were outside standing there mapping it was very cold. . . .

**THE COURT**:  Based upon your reconstruction of where the vehicles were located, would Ms. Bollivar's car have been able to move if the other car [in which Petitioner arrived and which was parked next to her car] was still next to it?

**THE WITNESS**: In order for her to move forward, the other car - - the way the cars were positioned her car would not have been able to go forward enough and clear the post [in front of her car] and the car.  She would end up striking either the post or the car in order to get out the gate that way.

**THE COURT**: But was she able to move any other way?

**THE WITNESS**: The only obvious and logical direction was to go backwards where there was no obstruction.

**THE COURT**: So the - - as the way you've reconstructed the other vehicle would not have prevented her from backing up?

**THE WITNESS**:  No, sir. . . .

Ex. C at 107-09 (Vol. II).  The judge also conveyed a juror question asking

if Kellerman could reconstruct how the victim's body may have been moved

after he was run over.  *Id.* at 109.  Kellerman testified that it could not be

determined because the EMS personnel had moved the body to attempt

lifesaving procedures.  *Id.*  The prosecutor followed up with further questions as did defense counsel.  *Id.* at 110-15.

None of these questions or answers elicited any unfairly prejudicial testimony and none were objected to by defense counsel.  Petitioner has not identified any portions of the questions or answers that rendered his trial fundamentally unfair or that demonstrated an abuse of discretion by the trial court in allowing the questions.  Petitioner failed to demonstrate that the procedure followed by the trial court, pursuant to state rules of procedure, was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States, or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  *See* 28 U.S.C. § 2254(d).  Habeas relief on Grounds 4 and 5 should be denied.

## Ground 6: Failure to Object to Prosecutor for Conflict of Interest

In this last ground, Petitioner contends that defense counsel rendered ineffective assistance by failing to seek removal of the prosecutor because Petitioner was suing the prosecutor's father, who was the Sheriff of Leon County.  ECF No. 22 at 15; ECF No. 23 at 19.  He raised this claim in his motion for post-conviction relief in state court, contending that his trial counsel rendered ineffective assistance by failing to object to the

prosecutor on the grounds that, at the time of trial, Petitioner had a pending suit against the prosecutor's father, the Sheriff.  He argued that having the Sheriff's son prosecute his case resulted in a conflict of interest on the part of the prosecutor, who evidenced that conflict by refusing to negotiate a plea in good faith with Petitioner.  Ex. G at 9-10.  An evidentiary hearing was held on the claim.

At the hearing held March 2, 2015, Petitioner testified that his suit was against Sheriff Larry Campbell and the county jail administrator for limitations imposed on Petitioner's use of the law library.  Ex. G at 72.  He testified that he did not "see any way feasible for me to be able to get anything reasonable with Mr. Jack Campbell being his son and me having a lawsuit against his father.  I brought this to his [defense counsel's] attention."  *Id.*  On cross-examination, when asked about his suit against the Sheriff, Petitioner testified that the lawsuit "really wasn't a lawsuit against him" but was against "the whole jail administration" for refusal to allow inmates to use the library.  *Id.* at 86.  Petitioner agreed that the Sheriff did not do anything personally to him, but he had to be sued because he was the sheriff.  *Id.*  Petitioner testified that he had no evidence that Jack Campbell, the prosecutor, knew about Petitioner's suit against his father

and that the prosecutor had done nothing to suggest he was trying to avenge his father. *Id.* at 87-88.

Petitioner's defense counsel testified at the hearing that the prosecutor never suggested or implied that he had personal bias against Petitioner due to a lawsuit against the Sheriff. *Id.* at 96. Counsel testified that he was told by Petitioner about the lawsuit but did not believe he had a good faith basis to file a motion to remove the prosecutor from the case for that reason. *Id.* at 96, 97. Defense counsel testified that nothing done by the prosecutor in the case indicated that the lawsuit had any bearing on the way he handled the case. *Id.* at 97. He testified that if the Sheriff had been sued for doing something directly to Petitioner, counsel would have objected to his son as prosecutor; but "a general motion [sic] about library privileges does not, in my professional opinion, rise to the level of concern that his son could not try the case." *Id.* at 98-101. The prosecutor, Jack Campbell, testified at the evidentiary hearing that he had no knowledge of the lawsuit filed by Petitioner against his father. *Id.* at 102. The post-conviction court denied the claim on the record, reasoning that even if the prosecutor had known about Petitioner's lawsuit against the Sheriff and the jail regarding library privileges, it would not be grounds to remove him as prosecutor in this case. Ex. G at 104.

Respondent correctly argues that under Florida law, for disqualification of a state attorney, the movant must show actual prejudice, and not simply the mere appearance of impropriety.  ECF No. 34.  The Florida Supreme Court in Huggins v. State, 889 So. 2d 743 (Fla. 2004), explained: "[D]isqualification is proper only if specific prejudice can be demonstrated.  Actual prejudice is 'something more than the mere appearance of impropriety.'  Disqualification of a state attorney is appropriate 'only to prevent the accused from suffering prejudice that he otherwise would not bear.' "  *Id.* at 768 (citations omitted) (quoting Farina v. State, 680 So. 2d 392, 395-96 (Fla. 1996)).

The testimony at the evidentiary hearing established that Petitioner suffered no actual prejudice in prosecution by the Sheriff's son due to the suit Petitioner and several other inmates filed against the jail and the Sheriff.  Any motion to disqualify the prosecutor based on the existence of the suit would have been meritless.  Defense counsel cannot be deficient in failing to file a non-meritorious motion.  Pinkney v. Sec'y, DOC, 876 F.3d 1290, 1297 (11th Cir. 2017); Denson v. U.S., 804 F.3d 1339 (11th Cir. 2015); Freeman v. Att'y Gen., 536 F.3d 1225, 1233 (11th Cir. 2008); United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992).  *See also* Brownlee v. Haley, 306 F.3d 1043, 1066 (11th Cir. 2002) (concluding that counsel

was not ineffective for failing to raise issues clearly lacking in merit);

Chandler v. Moore, 240 F.3d 907 (11th Cir. 2001) (concluding that counsel

was not ineffective for failing to raise a non-meritorious objection); Bolender

v. Singletary, 16 F.3d 1547, 1473 (11th Cir.1994) ("[I]t is axiomatic that the

failure to raise nonmeritorious issues does not constitute ineffective

assistance.").  Petitioner failed to carry his burden to demonstrate deficient

performance by counsel and failed to show actual prejudice.  Thus, he has

not demonstrated that, but for counsel's alleged error, there is a reasonable

probability—one sufficient to undermine confidence in the outcome—of a

different result.  *See* Strickland, 466 U.S. at 694.  Habeas relief on Ground

6 should be denied.

## Conclusion

Based on the foregoing, Petitioner Christopher Baity is not entitled to

federal habeas relief.  Accordingly, the amended § 2254 petition (ECF No.

22) should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United

States District Courts provides that "[t]he district court must issue or deny a

certificate of appealability when it enters a final order adverse to the

applicant," and if a certificate is issued "the court must state the specific

issue or issues that satisfy the showing required by 28 U.S.C.

§ 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still

be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a "substantial showing of the denial of a

constitutional right."  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S.

473, 483-84 (2000) (explaining substantial showing) (citation omitted).

Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the

final order, the court may direct the parties to submit arguments on whether

a certificate should issue."  The parties shall make any argument as to

whether a certificate should issue by objections to this Report and

Recommendation.

Leave to appeal in forma pauperis should also be denied.  *See* Fed.

R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is

filed, the court may certify appeal is not in good faith or party is not

otherwise entitled to appeal in forma pauperis).

## Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the

amended § 2254 petition (ECF No. 22).  It is further **RECOMMENDED** that

a certificate of appealability be **DENIED** and that leave to appeal in forma

pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on December 6, 2019.


**s/ Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**